```
 1  Yuo-Fong C. Amato (CA SBN 261453)
    Email: bamato@gordonrees.com
 2  GORDON & REES, LLP
 3  101 W. Broadway, Suite 2000
    San Diego, CA  92101
 4  Telephone: (619) 696-6700
 5  Fax: (619) 696-7124
 6
    Attorneys for Plaintiff
 7  CROSSFIT, INC.
 8
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> ICONIC INNOVATIONS INC., a California Corporation, PETER STRAUSS, HOOMAN GHAFFARI, individuals, and DOES 1-10, <br><br> Defendants. | Case No. 2:14-cv-7682 <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff CrossFit, Inc. ("CrossFit" or "Plaintiff"), for its Complaint against Iconic Innovations, Inc. ("Iconic Innovations"), Peter Strauss, Hooman Ghaffari and DOES 1 through 10 (collectively, "Defendants"), respectfully alleges as follows:

## Nature of the Action

1.   This is an action for willful violations of CrossFit's intellectual property rights, including trademark infringement, trademark dilution, false designation of origin, false advertising, and cyperpiracy arising out of Defendants' unauthorized use of CrossFit's registered service marks and trademarks.

///

CASE NO. _____

## Jurisdiction and Venue

2. This action arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*.

3. This Court has subject matter jurisdiction over CrossFit's claims as federal questions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

## The Parties

5. CrossFit is, and was at all times mentioned herein, a Delaware corporation, principally engaged in the business of fitness training and consultancy, providing fitness, nutrition and sports training to its patrons in this judicial district and worldwide. CrossFit is the owner of protectable interests in several registered United States trademarks and service marks comprised of the term "CrossFit" ("the CROSSFIT® marks").

6. CrossFit is informed and believes and based thereon alleges Iconic Innovations is a Corporation with its principle place of business at 12400 Ventura Boulevard, #1060, Studio City, CA 91604. Iconic Innovations is the parent company of SpeedX strength and conditioning group fitness centers, Krav Maga Unyted martial arts training centers, and MaxWod fitness training equipment retailer, all of which improperly offer exercise programs, classes, and/or equipment using the CROSSFIT® marks and the confusingly similar variation "XFIT" without authorization from CrossFit.

7. CrossFit is informed and believes and based thereon alleges that Defendant Peter Strauss is the registrant owner of the domain name http://www.speedxfit.com and that he has personally engaged in, controlled and/or knowingly played a significant role in accomplishing and continuing the infringing conduct complained of herein.

8. CrossFit is further informed and believes and based thereon alleges that Iconic Innovations is the alter ego of Peter Strauss and/or Hooman Ghaffari because there is a unity of ownership and interest between Strauss, Ghaffari, and Iconic Innovations, such that no separation between Iconic Innovations and Strauss and Ghaffari actually exists. On information and belief, Strauss and Ghaffari are the sole owners of Iconic Innovations, treat the assets of Iconic Innovations as their own, and authorized and/or ratified all of the acts of Iconic Innovations alleged herein for their own personal benefit. Because Strauss and Ghaffari have utilized Iconic Innovations's assets for personal gain and have diverted funds generated by Iconic Innovations's assets assets to their own personal use, treating Iconic Innovations as a separate entity from Strauss and Ghaffari would be unjust.

9. CrossFit is ignorant of the true names and capacities of defendants DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. CrossFit will amend this complaint and allege their true names and capacities when ascertained. CrossFit is informed and believes, and thereon alleges, that each of the defendants designated as "DOE" is responsible, in some manner, for the injuries and damages to CrossFit as alleged herein, and that CrossFit's damages were proximately caused by said defendants.

10. Plaintiff is informed and believes and thereon alleges that at all relevant times, each of the defendants, including each "DOE" defendant, was the agent, servant, employee, joint-venturer, and/or partner of each of the other defendants, and in doing the things herein alleged, each defendant was acting within the course and scope of such agency and/or employment.

### **CrossFit's Intellectual Property Rights**

11. Through its design, development, sales, and marketing activities, CrossFit has developed a revolutionary fitness training regimen that has become the principal strength and conditioning program for many police academies and

tactical operations teams, military special operations units, champion martial artists, and thousands of professional and amateur athletes worldwide. CrossFit licenses use of its intellectual property, including the CROSSFIT® marks, to affiliates that have received particularized training and received a certificate from CrossFit.

12. The CROSSFIT® marks are of particular value in the competitive "small-box" fitness training industry. CrossFit's careful cultivation, maintenance, and protection of its intellectual property rights has enabled CrossFit to amass considerable goodwill within its industry, and the CROSSFIT® marks are widely recognized around the world. Consumers readily and singularly associate the CROSSFIT® marks with CrossFit's business and services.

13. CrossFit diligently protects its intellectual property through, *inter alia,* trademark and service mark registration. CrossFit owns several registered United States trademarks and service marks comprised of the word mark "CrossFit," including registered U.S. Service Mark Registration No. 3,007,458 issued on October 18, 2005, for use in connection with fitness training services. CrossFit is the owner of the CROSSFIT® family of trademarks as registered with the United States Patent and Trademark Office, including without limitation Registration Numbers 3,007,458; 3,826,111; 4,049,689; 4,053,443; 4,122,681; 4,245,769; and 4,310,551 for use with its many products and services beginning at least as early as 1985. CrossFit also has many pending applications for addition to the CROSSFIT™ family of trademarks, including without limitation Serial Numbers 77/719,836; 77/719,838; 77/719,842; 85/629,318; and 85/595,737.

14. CrossFit provides a nationally standardized certificate program to personal trainers who desire to become licensed CrossFit affiliates. Persons who successfully complete CrossFit's certificate program and meet other requirements for affiliation are eligible to enter into annually renewable affiliate license

agreements, which permit limited use of the CROSSFIT® family of trademarks subject to various conditions. Only persons who have completed CrossFit's certificate process and entered into valid affiliate license agreements are permitted to use trademarks owned by CrossFit.

### **Defendant's Willful Infringement**

15. Iconic Innovations and its subsidiaries SpeedX, Krava Maga Unyted, and MaxWod are using, without permission, the CrossFit Mark to offer and promote their fitness services. Neither Iconic Innovations nor its subsidiaries are CrossFit affiliates and CrossFit has never authorized their use of the CROSSFIT® marks. Nonetheless, Iconic Innovations promotes its subsidiaries, facilities, services, and products using the CROSSFIT® marks.

16. SpeedX offers its services on the Internet through its website at http://www.speedxfit.com. SpeedX's website describes its program as "from the originators of the first boutique-style CrossFit gym," "a unique twist on traditional CrossFit," "based on CrossFit methodology," "took the gritty CrossFit concept to new heights," and "built on…CrossFit methodology" on various individual pages throughout the website.

17. SpeedX uses the CROSSFIT® marks to promote its own services in four instances of the source code for SpeedX's website, for example, "Training based on CrossFit Methodology," "the most effective Crossfit-style workout," "SpeedX CrossFit Class," and "High Intensity Interval Training based on CrossFit."

18. SpeedX uses the CROSSFIT® marks to promote its own services on its blog, accessible from its website http://www.speedxfit.com. At least nineteen articles on the blog include the CROSSFIT® marks, two of which use it in the titles "What shoes should I wear for CrossFit?" and "CrossFit to SpeedX: The Evolution of Fitness." Five of the articles address a SpeedX movement (wall balls,

ab-mat sit-ups, air squats, box jumps, and deck squats, respectively) claiming that they are either one of the "fundamental movements of CrossFit" or a "CrossFit technique." One blog states "SpeedX® is based on CrossFit-style functional fitness."

19. SpeedX uses the CROSSFIT® marks to promote its own services on its Facebook page. SpeedX's "About" section states "Created by CrossFit Experts." Additionally, on several Facebook posts made by SpeedX, the CROSSFIT® marks are used in a manner that creates the false impression that CrossFit endorses or otherwise approves the services SpeedX offers and/or that SpeedX is affiliated with CrossFit.

20. SpeedX uses the CROSSFIT® marks to promote its own services on its Four Square page. SpeedX describes its services as being "designed by certified CrossFit coaches."

21. SpeedX's use of the CROSSFIT® marks creates the false impression that SpeedX is a licensed CrossFit affiliate, creating consumer confusion as evidenced by at least one article published by a consumer. This article states that SpeedX is "a special method of Crossfit [*sic*]" and refers to SpeedX's facility as "a pretty darn impressive CrossFit gym."

22. SpeedX's use of the CROSSFIT® marks creates the false impression that SpeedX is a licensed CrossFit affiliate, creating consumer confusion as evidenced by Pinterest pins in which at least one user added a picture from the SpeedX website to a board titled "Cross-Fit [*sic*]."

23. SpeedX's use of the CROSSFIT® marks creates the false impression that SpeedX is a licensed CrossFit affiliate, creating consumer confusion as evidenced by Yelp reviews stating "obviously I thought I was doing Crossfit [*sic*]," "I did a lot of research about crossfit [*sic*] gyms in my neighbourhood [*sic*]. This

one is lowest priced…the crossfit [*sic*] workout is very tough," "it's a mix of cross-fit [*sic*]," and "they have all the latest crossfit-type [*sic*] equipment."

24. SpeedX's use of the CROSSFIT® marks creates the false impression that SpeedX is a licensed CrossFit affiliate, creating consumer confusion as evidenced by at least one review on its Google+ page stating "I took a SpeedX class…I was looking for something like Crossfit [*sic*]."

25. Krav Maga Unyted offers its services on the Internet through its website at http://www.kravmagaunyted.com. Krav Maga Unyted uses the CROSSFIT® marks to describe its own services on the website in describing a SpeedX class offered at its facility as "much like CrossFit," "SpeedX® takes the best aspects of CrossFit," and "rooted in the methodology of CrossFit." A response to a Frequently Asked Question on the website "What is SpeedX®?" is "SpeedX® is…based on CrossFit…developed by leading CrossFit experts." A response to a Frequently Asked Question on the website "What is the proper footwear for Krav Maga Unyted classes?" is "CrossFit style shoes are recommended." A response to a Frequently Asked Question on the website "Who are Krav Maga Unyted's instructors and what are their qualifications?" is " Jarret Waldman…Level 1 CrossFit Certified." (Mr. Waldman's certifications, however, are not current; his Level 1 CrossFit certificate expired as of December 31, 2011.) The Employment Opportunities page on the website describes Iconic Innovations as "taking the best of CrossFit" and "took the gritty CrossFit concept."

26. Krav Maga Unyted uses the CROSSFIT® marks to promote its own services on its YouTube account. Krav Maga Unyted d has posted eleven videos with titles that include "SpeedX CrossFit Technique."

27. Krav Maga Unyted's use of the CROSSFIT® marks creates the false impression that Krav Maga Unyted is a licensed CrossFit affiliate, creating

consumer confusion as evidenced by at least one Yelp reviews that states that the SpeedX class located at its facility is "comparable to Crossfit [*sic*]."

28. MaxWod offers its products and services on the Internet through its website at http://www.maxwod.com. MaxWod uses the CROSSFIT® marks to describe its own products and services on the website on the "About" page stating "we started out … when CrossFit was just beginning…We opened…the first luxury CrossFit…we developed the models that have been adopted by…other CrossFit box owners…we continue to innovate the CrossFit…industry." The homepage of the website states "Complete Facility Outfitting for CrossFit® Affiliates," "Everything you need to outfit your CrossFit Affiliate," and "MaxWod supplies premium equipment for CrossFit." The "Facility Outfitting" page states "Complete Facility Outfitting for CrossFit® Affiliates."

29. MaxWod offers a program that allows consumers to collect a commission from sales generated through a link to the MaxWod placed on their own websites. MaxWod uses the CROSSFIT® marks to describe this service on the "Affiliate Program Info" page on its website stating "MaxWod offers complete facility outfitting for CrossFit Gyms," "you are looking to outfit…a 15,000 Sq Ft CrossFit facility," "MaxWod is different that other CrossFit Outfitting companies," "we also offer…operational strategies for your CrossFit Box," and "MaxWod supplies fitness equipment for CrossFit Affiliates.

30. MaxWod uses the CROSSFIT® marks to describe the equipment sold on its website. The "Maxwod HP Silver Zinc Bar" is described as "proven to take the punishment of CrossFit workouts."

31. MaxWod promotes the equipment on its website by creating the "MaxWod Seal of Approval" and listing the equipment that qualifies for that Seal. MaxWod uses the CROSSFIT® marks in its description of the Seal stating "not all equipment is designed to stand up to the rigorous demands of CrossFit." A

paragraph further describing the Seal begins with "CrossFit Affiliates:" with both words bolded.

32.    The MaxWod website contains a page labeled "Blog." This blog uses the CROSSFIT® marks to promote the products and services offered by MaxWod. It includes an entry featuring an instructional video using equipment available at the MaxWod store titled "WALL BALL'S [*sic*] – CROSSFIT TECHNIQUES." There are at least two additional posts on the blog that use the CROSSFIT® marks in the title, "5 RESOURCES FOR CROSSFIT BODYWEIGHT TRAVEL WORKOUTS" and "PEOPLE IN CROSSFIT: TONY BLAUER'S CROSSFIT DEFENSE."

33.    MaxWod uses the CROSSFIT® marks to promote its own products and services in the source code that controls the function on online search engines. In the source code for the MaxWod website homepage, there are at least twenty (20) instances of use of the CROSSFIT® marks. This use is reflected by Google search results. MaxWod's Google search description is generated by an automated process which considers three factors that are sourced from the deliberate creation of the website—the content of the web page, the page description meta tag in the head of the page code, and other references to the page that appear on the internet. The Google search result description states "Maxwod supplies premium equipment for CrossFit."

34.    MaxWod uses the CROSSFIT® marks to promote its own products and services on its Facebook page. The "About" section on MaxWod's Facebook page states "Maxwod is a Premium CrossFit…Supplier." Images within MaxWod's Facebook photo album(s) include nine images that contain the CROSSFIT® marks.

35.    MaxWod uses the CROSSFIT® marks to promote its own products and services on its Twitter account. The "About" section of the account states

"Crossfit [*sic*] & Fitness Equipment Providers." Of the 291 tweets posted from the MaxWood account, there are 162 instances of use of the CROSSFIT® marks, often used in conjunction with advertisement for products available on the MaxWod website.

36. MaxWod uses the CROSSFIT® marks to promote its own products and services on its Instagram account. MaxWod's Instagram profile summary states in relevant part, "everything you need to outfit your CrossFit Affiliate." At least two of the images posted to MaxWod's Instagram account contain the CROSSFIT® marks. Of the seventy-five images posted to MaxWod's Instagram account, at least seventy-one are described with "crossfit [*sic*]"

37. MaxWod uses the CROSSFIT® marks to promote its own products and services on its LinkedIn account. The profile summary states "Maxwod [*sic*] is the leading provider of fitness equipment for…CrossFit."

38. MaxWod uses the CROSSFIT® marks to promote its own products and services on its Pinterest account. MaxWod's Pinterest profile summary states, "we outfit Crossfit [*sic*] gyms."

39. MaxWod's use of the CROSSFIT® marks creates the false impression that MaxWod is a licensed CrossFit affiliate, creating consumer confusion as evidenced by at least one article published by an online magazine titled, "Maxwod [*sic*]: Crossfit [*sic*] Equipment from Expert Box Owners."

40. CrossFit has not authorized or licensed Iconic Innovations, SpeedX, Krav Maga Unyted, or MaxWod to use the CROSSFIT® marks. CrossFit does not endorse the business of Iconic Innovations, SpeedX, Krav Maga Unyted, or MaxWod, or otherwise approve of their infringing uses of the CROSSFIT® marks.

41. On information and belief, the use of the CROSSFIT® marksby Iconic Innovations through SpeedX, Krav Maga Unyted, and MaxWod is with the intent to mislead consumers into believing that the entities are licensed CrossFit

affiliates and/or otherwise sponsored or endorsed by CrossFit and with the intent to profit by trading on CrossFit's goodwill.

42. Iconic Innovations, SpeedX, Krav Maga Unyted, and MaxWod were and are, at all relevant times, aware of CrossFit's prior use, ownership, and registration of the CROSSFIT® marks.

43. The use of the CROSSFIT® marks by Iconic Innovations through SpeedX, Krav Maga Unyted, and MaxWod reflects a deliberate attempt to make their services appear as if they originate from a licensed CrossFit affiliate or are otherwise sponsored or endorsed by CrossFit.  On information and belief, the intent of Iconic Innovations, SpeedX, Krav Maga Unyted, and MaxWod is to give their services instant credibility that would not be otherwise warranted, and to confuse the consuming public.

44. The use of the CROSSFIT® marks by Iconic Innovations through SpeedX, Krav Maga Unyted, and MaxWod is likely to cause confusion or mistake, and deceive purchasers, potential purchasers, and the relevant consuming public as to the source, sponsorship or approval of services of Iconic Innovations, SpeedX, Krav Maga Unyted, and MaxWod thereby causing harm to CrossFit's reputation and goodwill.

45. The use of the CROSSFIT® marks by Iconic Innovations through SpeedX, Krav Maga Unyted, and MaxWod in connection with their services and/or goods is likely to cause initial interest confusion or mistake, and initially deceive purchasers, potential purchasers, and the relevant consuming public as to the source, sponsorship or approval of their services, and/or as to their affiliation with CrossFit, thereby causing harm to CrossFit's reputation and goodwill.

46. The unlawful conduct of Iconic Innovations, SpeedX, Krav Maga Unyted, and MaxWod is causing and will continue to cause harm to CrossFit.  In particular, consumers who view their storefronts, fitness facilities, websites, and

social media pages for their services and/or goods in connection with the CrossFit Mark will believe that their services and/or goods are associated with CrossFit and/or the CROSSFIT® marks. This conduct, if not enjoined, will undermine the goodwill that CrossFit has spent decades carefully cultivating for its marks.

47. CrossFit addressed the use of the CROSSFIT® marks with MaxWod in October 2013. CrossFit exchanged some emails with MaxWod, continually following up when their website was changed only partially to remove instances of the CROSSFIT® marks. On July 16, 2014, CrossFit sent three separate emails to SpeedX, Krav Maga Unyted, and MaxWod requesting that they stop their infringing uses of the CROSSFIT® marks and respond within one week. After no response was received, on July 29, 2014, CrossFit sent a second correspondence via e-mail to SpeedX, Krav Maga Unyted, and MaxWod requesting advisement of their intentions regarding the demands set forth in CrossFit's initial letter and a response by August 1, 2014. CrossFit received a response that afternoon confirming receipt of the request(s) from Hooman Ghaffari. The response stated that in regards to the SpeedX and Krav Maga Unyted, the company would conduct their own audit and make necessary changes by August 30, 2014. Regarding MaxWod, Ghaffari asserted that their use of the CROSSFIT® marks was not infringement, and claimed that emails previously exchanged with CrossFit permitted use of the CROSSFIT® marks.

48. CrossFit responded to Ghaffari on July 30, 2014, stating that it reviewed all previous correspondences and CrossFit did not grant permission for MaxWod to use the CROSSFIT® marks. CrossFit disputed Ghaffari's claim that MaxWod's use of the CROSSFIT® marks constituted fair use. CrossFit issued a final demand that SpeedX, Krav Maga Unyted, and MaxWod cease their infringing use of the CROSSFIT® marks by August 4, 2014. Despite being put on notice, Iconic Innovations, SpeedX, Krav Maga Unyted, and MaxWod have failed to

respond to the August 4, 2014 letter and/or comply with the demands set forth in CrossFit's correspondences.

## FIRST CLAIM

### Trademark Infringement (15 U.S.C. § 1114)

### (Against All Defendants and Does 1-10)

49. CrossFit repeats and realleges the allegations set forth above.

50. This claim is for trademark infringement under the laws of the United States, Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

51. Defendants have used, and continues to use, the CROSSFIT® marks to advertise and sell Defendants' fitness services and/or exercise equipment in violation of CrossFit's rights in its registered trademarks and service marks.

52. Defendants' use of the CROSSFIT® marks is likely to cause confusion, mistake, and to deceive consumers.

53. Defendants' actions constitute a blatant attempt to confuse the consuming public and to trade off CrossFit's goodwill.

54. Defendants acted knowingly and willfully, with full knowledge of the likelihood of confusion and with the intent to deceive consumers in order to trade off the efforts and earned goodwill and reputation of CrossFit.

55. By reason of the foregoing acts of trademark infringement, CrossFit has been injured in an amount not yet ascertained. Further, Defendants have been unjustly enriched by virtue of their deception of consumers and misappropriation of CrossFit's goodwill.

56. In addition, as a result of Defendants' acts of infringement, CrossFit has suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill. Unless this Court enjoins Defendants' acts of infringement, CrossFit will continue to suffer irreparable harm.

57. Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM

### False Designation of Origin  (15 U.S.C. § 1125(a))

### (Against All Defendants and Does 1-10)

58. CrossFit repeats and realleges the allegations set forth above.

59. Defendants' use of the CROSSFIT™ marks in interstate commerce, without CrossFit's consent, is a false designation of origin causing a likelihood of confusion, mistake, and deception as to the source, sponsorship, affiliation, and/or connection in the minds of the public. Defendants' conduct has infringed on CrossFit's trademark rights in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

60. By reason of the foregoing, CrossFit has been injured in an amount not yet fully determined. Further, Defendants have been unjustly enriched by virtue of their deception of consumers and misappropriation of CrossFit's goodwill.

61. In addition, as a result of Defendants' acts of infringement, CrossFit suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill. Unless this Court enjoins Defendants' acts of infringement, CrossFit will continue to suffer irreparable harm.

62. Defendants' actions have been knowing, intentional, wanton, and willful. The principles of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

/ / /

## THIRD CLAIM

## Trademark Dilution  (15 U.S.C. § 1125(c))

### (Against All Defendants and Does 1-10)

63. CrossFit repeats and realleges the allegations set forth above.

64. This claim is for trademark dilution under the laws of the United States, Section 43 of The Lanham Act, 15 U.S.C. § 1125(c).

65. Because of the substantive investment CrossFit has made in marketing its business, throughout years of continuous use in commerce, including advertising and extensive marketing, CrossFit's service marks and trademarks have become instantly recognizable and distinctive in the fitness industry, have gained secondary meaning, and have become both distinctive and famous.  Thus, the CROSSFIT® marks qualify as "famous marks" under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c).

66. Defendants' unauthorized use of the CrossFit name dilutes the capacity of the CROSSFIT® marks to identify and distinguish CrossFit's services.

67. By reason of the foregoing acts of trademark dilution, CrossFit has been injured in an amount not yet ascertained.  Further, Defendants have been unjustly enriched by virtue of their dilution of the CROSSFIT® marks.

68. In addition, as a result of Defendants' acts of dilution, CrossFit has suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill.  Unless Defendants' acts of dilution are enjoined by this Court, CrossFit will continue to suffer a irreparable harm.

69. Defendants' actions have been knowing, intentional, wanton, and willful.  The principals of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM

## False Advertising  (15 U.S.C. § 1125 (a))

### (Against All Defendants and Does 1-10)

70.     CrossFit repeats and realleges the allegations set forth above.

71.      CrossFit is in the business of licensing its name to affiliates and certifying the trainers of such affiliates.  Because CrossFit provides its licenses and certifications in interstate commerce, and because the false advertising at issue has been disseminated throughout interstate commerce (e.g., via the internet), CrossFit is entitled to relief under the Lanham Act.

72.     CrossFit licensees are in the business of providing physical training instruction to consumers.

73.     Krav Maga Unyted is in the business of providing physical training instruction to consumers.

74.     Defendant Krav Maga Unyted, operating through its website, published a statement that Jarrett Waldman "has earned…certifications in CrossFit."

75.     This is false, misleading and/or deceptive; Jarret Waldman does not hold a CrossFit license or certification.

76.     Krav Maga Unyted intended the publication of this false, misleading, and/or deceptive statement of fact to interstate business.

77.     This statement of fact has already diverted and/or is likely to attract potential clients of CrossFit licensees from licensed CrossFit affiliates to Krav Maga Unyted.

78.     By reason of the foregoing act of false advertising, CrossFit has been injured in an amount not yet ascertained.  Further, Defendants have been unjustly enriched by virtue of their false advertising of the CROSSFIT® marks.

79. In addition, as a result of Defendants' act of false advertising, CrossFit has suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill. Unless Defendants' false advertising is enjoined by this Court, CrossFit will continue to suffer a irreparable harm.

80. Defendants' actions have been knowing, intentional, wanton, and willful. The principals of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

## FIFTH CLAIM

### Cyberpiracy  (15 U.S.C. § 1125 (d))

### (Against All Defendants and Does 1-10)

81. CrossFit repeats and realleges the allegations set forth above.

82. This claim is brought under the Cyberpiracy Protection Act, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

83. On information and belief, Peter Strauss is the registrant of the domain name http://www.speedxfit.com.  This domain name is confusingly similar to and dilutive of CrossFit's registered trademarks and service marks.

84. Defendants are presently using the domain name http://www.speedxfit.com in bad faith with the intent to profit from unauthorized use of the CROSSFIT® marks. Defendants' bad faith is established, *inter alia*, because despite the fact that CrossFit has specifically informed Defendant that the name of their business is likely to create consumer confusion and constitutes unauthorized use of a confusingly similar variation of the CROSSFIT® marks, Defendant continues to use the domain name with the intent of diverting consumers from CrossFit's website and from the websites of licensed CrossFit affiliates in an

attempt to profit off consumer deception and misappropriation of CrossFit's goodwill.

85. By reason of the foregoing acts of cyberpiracy, CrossFit has been injured in an amount not yet ascertained. Further, Defendants have been unjustly enriched by virtue of their cyberpiracy of the CROSSFIT® marks.

86. In addition, as a result of Defendants' acts of cyberpiracy, CrossFit has suffered and will continue to suffer irreparable harm for which CrossFit has no adequate remedy at law, including damage to CrossFit's goodwill. Unless Defendants' acts of cyberpiracy are enjoined by this Court, CrossFit will continue to suffer a irreparable harm.

87. Defendants' actions have been knowing, intentional, wanton, and willful. The principals of equity warrant an award to CrossFit of treble damages and profits, attorney's fees, and the costs of this action pursuant to 15 U.S.C. § 1117.

88. In the alternative, CrossFit may elect to recover statutory damages under 15 U.S.C. § 1117(d) in lieu of actual damages and profits. Defendants' bad faith justifies recovery of the maximum allowable statutory damages of $100,000.00 per domain name.

89. In addition to the remedies sought above, CrossFit is entitled to an order forfeiting, cancelling, or transferring the domain name http://www.speedxfit.com to CrossFit pursuant to 15 U.S.C. § 1125 (d)(1)(C).

## **PRAYER FOR RELIEF**

WHEREFORE, CrossFit demands judgment as follows:

1. Judgment in CrossFit's favor on all claims herein;

2. A preliminary injunction preventing Defendants and those additional parties specified in Federal Rule of Civil Procedure 65(d) from continued

infringement of CrossFit's intellectual property rights, including infringement of CrossFit's registered trademarks and service marks;

3. A permanent injunction preventing Defendants and those additional parties specified in Federal Rule of Civil Procedure 65(d) from continued infringement of CrossFit's intellectual property rights, including infringement of CrossFit's registered trademarks and service marks;

4. An accounting of profits and damages resulting from Defendants' false designation of origin, trademark infringement, trademark dilution, false advertising, and cyberpiracy, and trebling of such damages under the trademark laws because of the knowing, intentional, willful, and wanton nature of Defendants' conduct;

5. On the Lanham Act claims, an award to CrossFit of (a) an amount equal to the actual damages suffered by CrossFit as a result of the infringement of its trademarks; (b) an amount equal to the profits earned by Defendants as a result of its infringement; (c) an amount equal to three times the monetary award assessed in view of Defendants' willful and wanton infringement; (d) in the alternative as may be elected by CrossFit, pursuant to Lanham Act Section 35, 15 U.S.C. § 1117(c), statutory damages for each of Defendants' willful acts of infringement; (e) pre-judgment interest and post-judgment interest; (f) an amount equal to CrossFit's reasonable attorney's fees, as an "exceptional" case under 15 U.S.C. § 1117;

6. On the Cyberpiracy claim, an order forfeiting, cancelling, or transferring the domain name "www.speedxfit.com" to CrossFit pursuant to 15 U.S.C. § 1125 (d)(1)(C);

7. An award of interest, attorney's fees, and costs; and

8. Such other and further relief as the Court deems proper.

/ / /

/ / /

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38, Federal Rules of Civil Procedure, CrossFit hereby demands a jury trial on all issues triable as of right to a jury.

DATED:  October 3, 2014         GORDON & REES LLP

By: _____/s/ Amato_____
Yuo-Fong C. Amato, Esq.
Attorney for Plaintiff
CrossFit, Inc.